Filed 11/24/15 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>DANNY FRANK GONZALEZ,<br><br>　　　Defendant and Respondent. | B262300<br><br>(Los Angeles County<br>Super. Ct. No. MA063343)<br><br>**ORDER MODIFYING THE OPINION**<br><br>**[no change in judgment]** |

THE COURT:

It is ordered that the opinion filed herein on October 29, 2015, is modified as follows:

1.  At page 13, second full paragraph, in the last sentence that begins with "Evidence Gonzalez paid a $2,000 civil penalty . . ." delete the phrase "due process clause" and replace with: double jeopardy clause.

There is no change in the judgment.

Respondent's petition for rehearing is denied.

_____

BIGELOW, P. J.　　　　　　　　　RUBIN, J.　　　　　　　　　OHTA, J.[*]

---

[*]　　　Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B262300 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. MA063343) |
| v. | |
| DANNY FRANK GONZALEZ, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Bernie C. LaForteza, Judge.  Reversed.

Jackie Lacey, Los Angeles County District Attorney, Roberta Schwartz and Matthew Brown, Deputy District Attorneys, for Plaintiff and Appellant.

Ronald L. Brown, Los Angeles County Public Defender, Albert J. Menaster, John Henderson and Thomas Moore, Deputy Public Defenders, for Defendant and Respondent.

_____

Defendant Danny Frank Gonzalez was charged with one count of violating Penal Code section 247.5,[1] discharging a laser at an occupied aircraft. On the date of the preliminary hearing, Gonzalez filed a motion to dismiss the complaint based on double jeopardy for a prior payment of a civil penalty to the federal government. The trial court granted the motion. We reverse.

## FACTS

The facts underlying this case are not disputed. On April 23, 2014, Gonzalez discharged a laser at an occupied aircraft operated by the Los Angeles County Sheriff's Department, Air 29. The deputy in Air 29 observed Gonzalez's action and relayed information to ground units who detained him and found a laser.[2] The Los Angeles County District Attorney's Office (People) filed a felony complaint for arrest warrant charging Gonzalez as noted, *ante*. He was arraigned on the complaint, entered a not guilty plea, and was released on his own recognizance. On December 2, 2014, the date for the preliminary hearing, Gonzalez filed a motion entitled a "Plea of Once in Jeopardy."

In support of the motion, Gonzalez attached a letter from the U.S. Department of Transportation, Federal Aviation Administration (FAA). The FAA letter referenced a case number (2014WP010068) and acknowledged Gonzalez's payment of a $2,000 civil

---

[1] All further undesignated section references are to the Penal Code.

Section 247.5 provides in relevant part, "Any person who willfully and maliciously discharges a laser at an aircraft, whether in motion or in flight, while occupied, is guilty of a violation of this section, which shall be punishable as either a misdemeanor by imprisonment in the county jail for not more than one year or by a fine of one thousand dollars ($1,000), or a felony by imprisonment pursuant to subdivision (h) of Section 1170 for 16 months, two years, or three years, or by a fine of two thousand dollars ($2,000)."

[2] These facts are set forth in the early disposition report prepared by the Los Angeles County Probation Department.

penalty.[3]  The record on appeal shows nothing else about Gonzalez's contact with the FAA.

In ruling on the motion, the trial court found "the civil penalty is tantamount to punishment" under *United States v. Halper* (1989) 490 U.S. 435 (*Halper*) and granted the dismissal.

The People timely appealed.

## DISCUSSION

### A.    *Introduction*

The core issue is whether Gonzalez's payment of a $2,000 civil penalty to a federal agency constitutes criminal punishment subject to the proscription against double jeopardy.[4]  Gonzalez's a plea of once in jeopardy may be based on three separate provisions of law:  (1) the Fifth Amendment of the federal Constitution, made applicable to the states through the Fourteenth Amendment, (2) statutory double jeopardy provisions enacted by the California Legislature, specifically sections 656 and 793,[5] and (3) article I, section 15 of the California Constitution.

We hold Gonzalez is not entitled to a dismissal of the criminal charge based on double jeopardy under the federal Constitution, California's statutes, or the California Constitution.  In reaching this conclusion, we apply federal constitutional principles to

---

**3**     The letter contains one main paragraph which states, "We hereby acknowledge receipt of your payment in the amount of $2,000.00 made on October 17, 2014 via pay.gov, Agency Tracking number 74694167777.  You have now fully paid the $2,000.00 civil penalty that was assessed in this matter and you may consider this matter closed."

**4**     Under both the federal and the state Constitutions, double jeopardy addresses two distinct set of circumstances:  (1) prosecuting an individual for the same act after an acquittal or conviction, and (2) punishing an individual for the same act multiple times. (*People v. Bright* (1996) 12 Cal.4th 652, 660, overruled on other grounds as stated in *People v. Seel* (2004) 34 Cal.4th 535, 543-544.)

**5**     California provides other statutory protections under double jeopardy including section 687 (second prosecution for the same offense) and section 794 (conviction or acquittal in another county).

our state Constitution, and conclude Gonzalez has failed to establish the civil penalty imposed by the FAA was criminal punishment.

**B.      *Standard of Review***

When evidence is uncontradicted, the question of former jeopardy is one of law for the court to decide.  (*People v. Davis* (2011) 202 Cal.App.4th 429, 438.)  Here, because neither party raises any factual disputes, we apply de novo review.

Gonzalez bears the burden of establishing the necessary facts to prove he was placed in former jeopardy by reason of a prior conviction or acquittal.  (*People v. Burkhart* (1936) 5 Cal.2d 641, 643; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1187; *People v. Mason* (1962) 200 Cal.App.2d 282, 285.)  We find no reason why this burden should be different in the context of a double jeopardy claim based on multiple punishments.

**C.      *The People's and Gonzalez's Contentions***

The People claim the trial court erred for several reasons.  First, the People assert neither the state nor the federal double jeopardy clause prevent successive prosecutions by separate sovereigns.  Since the FAA is a federal agency, the People contend a state prosecution based on California law is not barred.  Second, the People argue double jeopardy only prohibits successive prosecutions for the "same *offense*, not the same *act*."  Citing several federal statutes as possible bases for the imposition of the fine, the People contend conduct regulated under federal statutes and section 247.5 differ.  The People also claim double jeopardy only applies to successive criminal punishments, not civil sanctions.  Citing *Hudson v. United States* (1997) 522 U.S. 93, 100 (*Hudson*), the People argue Gonzalez has failed to show by the "clearest proof" necessary the FAA civil penalty was criminal punishment.  Lastly, the People assert California's double jeopardy statutes do not apply to Gonzalez's case because they pertain only to prior criminal cases.

Gonzalez counters the statutory provisions set forth in sections 656 and 793 are intended to provide broader protection for individuals than the federal Constitution.  Thus, even if the federal double jeopardy clause does not bar successive prosecutions by

4

separate sovereigns for the same act, sections 656 and 793 do.[6]  Gonzalez further argues the civil penalty imposed by the FAA was criminal punishment under the fourth and fifth factors identified in *Kennedy v. Mendoza-Martinez* (1963) 372 U.S. 144, 168-169 (*Kennedy*); the civil penalty served the purpose of retribution and deterrence and the behavior to which the civil penalty applied is already a crime.

## D.    Federal Constitution

The double jeopardy clause of the Fifth Amendment provides no "person be subject for the same offense to be twice put in jeopardy of life or limb . . . ."  (U.S. Const., 5th Amend.)  In *Benton v. Maryland* (1969) 395 U.S. 784, 794, the double jeopardy clause of the federal Constitution was made enforceable against the states through the due process clause of the Fourteenth Amendment.

The federal double jeopardy clause "consist[s] of three separate constitutional protections.  It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  (*North Carolina v. Pearce* (1969) 395 U.S. 711, 717, fns. omitted, overruled as stated in *Alabama v. Smith* (1989) 490 U.S. 794, 798-803.)  For ease of reference, appellate courts often use the terms "successive prosecutions" and "successive punishments" when referring to the protection afforded by the clause.  We shall do the same.  The instant case involves successive punishments for the same conduct.

---

**6**    Section 656 provides:  "Whenever on the trial of an accused person it appears that upon a criminal prosecution under the laws of the United States, or of another state or territory of the United States based upon the act or omission in respect to which he or she is on trial, he or she has been acquitted or convicted, it is a sufficient defense."

Section 793 provides:  "When an act charged as a public offense is within the jurisdiction of the United States, or of another state or territory of the United States, as well as of this state, a conviction or acquittal thereof in that other jurisdiction is a bar to the prosecution or indictment in this state."

### 1.    Successive Punishment Jurisprudence

A payment of a civil penalty not based on a criminal prosecution may be protected under the federal double jeopardy clause if it constitutes criminal punishment. *Hudson* re-established the two-part analysis on how a civil penalty imposed by the government may constitute criminal punishment under the double jeopardy clause of the Fifth Amendment. The United States Supreme Court explained, "The Clause protects only against the imposition of multiple *criminal* punishments for the same offense." (*Hudson*, *supra*, 522 U.S. at p. 99, citations omitted.)

In *Hudson*, the high court asked whether a civil penalty imposed by a federal agency, the Office of the Comptroller of the Currency, constituted criminal punishment barring a subsequent federal criminal prosecution under the double jeopardy clause of the Fifth Amendment. Answering in the negative, *Hudson* contrasted two prior cases: *Halper* and *United States v. Ward* (1980) 448 U.S. 242 (*Ward*). In holding the federal law authorizing the civil penalty was not criminal punishment subject to the double jeopardy clause of the Fifth Amendment, the high court disapproved *Halper* and reaffirmed the traditional double jeopardy principles used in *Ward*.

*Hudson* found *Halper* ill-considered and unworkable. The high court explained, "If a sanction must be 'solely' remedial (i.e., entirely nondeterrent) to avoid implicating the Double Jeopardy Clause, then no civil penalties are beyond the scope of the Clause." (*Hudson*, *supra*, 522 U.S. at p. 102.) *Hudson* further reasoned, "The analysis applied by the *Halper* Court deviated from our traditional double jeopardy doctrine in two key respects. First, the *Halper* Court bypassed the threshold question: whether the successive punishment at issue is a 'criminal' punishment. Instead, it focused on whether the sanction, regardless of whether it was civil or criminal, was so grossly disproportionate to the harm caused as to constitute 'punishment.' . . . The second significant departure in *Halper* was the Court's decision to 'assess the character of the actual sanctions imposed,' . . . rather than, . . . evaluating the 'statute on its face' to determine whether it provided for what amounted to a criminal sanction." (*Id.* at p. 101, citations omitted.)

6

*Hudson* applied *Ward*'s two-step process on what it called "traditional double jeopardy principles" to the facts. (*Hudson*, *supra*, 522 U.S. at p. 103.) First, "the question whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction." (*Ward*, *supra*, 448 U.S. at p. 248; see *Hudson*, at pp. 99, 103.) Here, the question is whether the Legislature intended the sanction to be civil or criminal in nature. Next, *Hudson* considered whether the sanction, "despite [the Legislature's] manifest intention to establish a civil, remedial mechanism, nevertheless, provided for sanctions so punitive as to '[transform] what was clearly intended as a civil remedy into a criminal penalty.' [Citation.]" (*Ward*, at p. 249; see *Hudson*, at pp. 99, 104.) Here, the question is whether the sanction, although intended to be civil, is so punitive in purpose or effect as to constitute criminal punishment. (*Hudson*, at p. 99.) In this assessment, *Hudson* referenced the factors listed in *Kennedy* as useful guideposts, including: "(1) '[w]hether the sanction involves an affirmative disability or restraint'; (2) 'whether it has historically been regarded as a punishment'; (3) 'whether it comes into play only on a finding of *scienter*'; (4) 'whether its operation will promote the traditional aims of punishment--retribution and deterrence'; (5) 'whether the behavior to which it applies is already a crime'; (6) 'whether an alternative purpose to which it may rationally be connected is assignable for it'; and (7) 'whether it appears excessive in relation to the alternative purpose assigned.' " (*Hudson*, at pp. 99-100.)

*Hudson* further noted, " 'these factors must be considered in relation to the statute on its face,' . . . and 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty . . . ." (*Hudson*, *supra*, 522 U.S. at p. 100, citations omitted.)

Thus, under the double jeopardy clause of the federal Constitution, legislative intent, while clearly important, is not the end of the analysis. Even if civil in nature, a trial court must next assess the *Kennedy* factors as guideposts to determine whether the sanction is punitive in purpose or effect thus constituting criminal punishment. Here, the court must be convinced the clearest proof supports this conclusion. If so, the payment of

7

that sanction serves as a bar to a successive prosecution or punishment under the double jeopardy clause of the Fifth Amendment.

### 2. Separate Sovereign Doctrine

Under the separate sovereign doctrine, it is well settled the federal Constitution does not bar either the federal or state governments from instituting criminal prosecutions for the same act or conduct. (*Abatte v. United States* (1959) 359 U.S. 187, 194-195; *People v. Comingore* (1977) 20 Cal.3d 142, 145.) The parties agree the separate sovereign doctrine applies to Gonzalez's case.

Here, the FAA, a federal agency, issued a civil sanction against Gonzalez. The criminal prosecution thereafter was brought by the Los Angeles County District Attorney's Office, a county agency of the state of California. This is a text book application of the separate sovereign doctrine. The parties concede the Fifth Amendment is not a bar to this prosecution. We agree.

### E. *California's Double Jeopardy Statutes: Sections 656 and 793*

In California, sections 656 and 793 provide double jeopardy protection beyond the protection afforded by the federal Constitution. Although the Fifth Amendment does not bar successive prosecution by separate sovereigns, these statutes apply to prohibit prosecutions by separate sovereigns. Gonzalez claims sections 656 and 793 support the trial court's decision to dismiss.

Enacted in 1872, section 656 bars a successive "trial," whereas section 793 prohibits a successive "prosecution." Unlike the broad terminology, the "jeopardy of life or limb," used in the Fifth Amendment, sections 656 and 793 are written narrowly. These sections are triggered by a former acquittal or a former conviction for the same act or conduct, i.e., prior criminal prosecution. Since Gonzalez was not "acquitted" or "convicted" in a federal criminal case, the only way sections 656 and 793 would apply is for us to interpret "acquitted" and "convicted" in section 656, and "conviction" and "acquittal" in section 793, more broadly than the words appear to mean.

When interpreting statutory language, "[w]e begin with the fundamental rule that our primary task is to determine the lawmakers' intent." (*Delaney v. Superior Court*

8

(1990) 50 Cal.3d 785, 798.) Under the "plain meaning" rule, "[t]he court looks first to the language of the statute; if clear and unambiguous, the court will give effect to its plain meaning." (*Young v. Gannon* (2002) 97 Cal.App.4th 209, 223.) "But the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)

The plain meaning of the words "acquit" and "convict" in their various grammatical forms relate to criminal judgment. They define what happens to a person when a criminal case concludes. These words are normally not used in other ways.

Considering a provision in the Penal Code relating to the same subject matter is instructive. On rendering a special verdict or judgment, section 1155, enacted in 1872, the same year as sections 656 and 793 provides, "If the plea is a former conviction or acquittal or once in jeopardy of the same offense, the court must give judgment of acquittal or conviction, as the facts prove or fail to prove the former conviction or acquittal or jeopardy." In other words, upon a plea of once in jeopardy, the court is to enter a criminal judgment of acquittal or conviction based on the evidence adduced in the trial of the prior acquittal or conviction. The symmetry is readily apparent. The subsequent criminal judgment of acquittal or conviction is determined by evidence of the prior criminal judgment of acquittal or conviction. There can be no other rational interpretation of these terms. We find the terms "acquitted" and "convicted" in section

9

656, and the terms "conviction" and "acquittal" in section 793, do not include governmental imposition of prior civil penalties.

*People v. Westbrook* (1996) 43 Cal.App.4th 220, is in accord. There, defendant claimed the state criminal prosecution was barred by a prior federal civil forfeiture action. He claimed multiple prosecutions were forbidden by sections 654 and 656. In summarily denying this claim, *Westbrook* explained, "Penal Code section 656 bars a state criminal proceeding after a criminal conviction or acquittal in another jurisdiction of a charge involving the same act or omission. [Citation.] Here, the federal action involving [defendant] was a civil forfeiture action, not a criminal prosecution. Penal Code section 656 does not apply." (*Westbrook*, at p. 226, fn. omitted.)

Gonzalez urges a broader reading of the statute "because the legislative history and inherent goals of the statute are meant to provide broader protections than the constitutional double jeopardy clause." He argues a narrow reading leads to an absurd result as successive punishments would receive less protection in California than successive prosecutions. We are limited by the clear and unambiguous wording of sections 656 and 793.

Here, no prior criminal prosecution occurred. Sections 656 and 793 do not apply.

## F.    *California Constitution*

California's double jeopardy clause, article I, section 15, reads in pertinent part, "Persons may not twice be put in jeopardy for the same offense . . . ." In *People v. Monge* (1998) 16 Cal.4th 826, 844 (*Monge*), our Supreme Court stated, "The purpose behind the state and federal double jeopardy provisions is the same." Just as the federal double jeopardy clause protects against successive prosecutions and punishments, so does the state's constitutional provision.

### 1.    Application of *Hudson's* Analytical Framework Under Article I, Section 15

No California case has held that the imposition of a civil fine is or is not criminal punishment under article I, section 15. In *People v. Hanson* (2000) 23 Cal.4th 355 (*Hanson*), our Supreme Court addressed whether a trial court violates double jeopardy by

10

increasing a restitution fine following remand after appeal. While the court had an opportunity to decide the case on state constitutional grounds, it ultimately relied on *Hudson*'s analytical framework, finding the Legislature intended such restitution fines to be punishment.[7] (*Hanson*, at p. 362.)

Because no California case has interpreted the state Constitution's double jeopardy clause in this context, we apply some familiar principles when dealing with similar federal and state constitutional provisions. We cannot simply use the federal analytical framework without first determining whether the framework should apply under our state's Constitution. In *Monge*, our Supreme Court stated, "when we interpret a provision of the California Constitution that is similar to a provision of the federal Constitution, ' "cogent reasons must exist" ' before we will construe the Constitutions differently and ' "depart from the construction placed by the Supreme Court of the United States." ' [Citations.]" (*Monge*, *supra*, 16 Cal.4th at p. 844.)

Interpreting the state Constitution to include *Hudson*'s analytical framework under the state's double jeopardy clause is appropriate for several reasons. First, in *Hanson*, our Supreme Court was presented with an opportunity to distinguish between the two clauses but relied instead on *Hudson*. If our Supreme Court believed the state's double jeopardy clause ought to be interpreted differently, it could have done so then. Our Supreme Court made no such distinction. Second, as *Monge* explained, the purpose behind the state and the federal double jeopardy clauses is the same: to protect a defendant's interest in avoiding the stress of repeated prosecutions and the increased risk of erroneous convictions. (*Monge*, *supra*, 16 Cal.4th at p. 844.) If the purpose is the same, the application of the rules should be the same. Independent of the Fifth

---

[7] Our Supreme Court explained, "Drawing on the analytical framework set forth in *Hudson* . . . , the Attorney General asserts a restitution fine is a civil penalty and thus falls outside constitutional protection. Defendant urges us to formulate a more expansive test commensurate with the broader construction of our state Constitution . . . . We need not definitively resolve this threshold issue, for even under the federal standard we conclude restitution fines are punishment." (*Hanson*, *supra*, 23 Cal.4th at p. 361.)

11

Amendment, we adopt *Hudson*'s analytical framework under the state's double jeopardy clause to resolve Gonzalez's claim.

### 2. Application of *Hudson's* Analytical Framework to Gonzalez's Case

We apply *Hudson*'s traditional double jeopardy principles to the facts. Gonzalez has the burden to prove: (1) the legislative intent to treat the civil penalty as a criminal sanction, and, if not (2) the purpose and effect of the civil fine was constitutionally punitive. We take these in turn.

On legislative intent, Gonzalez provided evidence that he paid $2,000 to the FAA. The letter described the payment as a "civil penalty." Gonzalez did not prove what provision of law authorized the FAA's civil penalty. Without that information, it is simply guesswork to ascertain legislative intent. Gonzalez fails to show the legislative intent here was to impose criminal punishment.

Even assuming the legislative intent was to create a civil penalty, the trial court's order must be affirmed if Gonzalez shows the civil penalty was punitive in purpose and effect. This analysis is not done in a vacuum. The high court in *Hudson* instructed the factors it previously adopted in *Kennedy* are to be considered in relation to the statute on its face and only the clearest proof will suffice to override legislative intent. (*Hudson*, *supra*, 522 U.S. at p. 100.)

Gonzalez posits two of the *Kennedy* factors, four and five, respectively, are applicable to his case and should be given great weight: whether the civil penalty promotes the traditional aims of punishment -- retribution and deterrence; and whether the behavior to which it applies is already a crime. (*Hudson*, *supra*, 522 U.S. at pp. 99-100.) Gonzalez is immediately faced with a huge hurdle. Since he did not place into the record the federal law that authorized the FAA penalty, we have no way of comparing the *Kennedy* factors cited to the law on its face.

Despite that, on factor four, Gonzalez argues the trial court's comparative analysis between the maximum fine for a violation of section 247.5, which is $2,000, and the amount of the civil penalty in fact imposed by the FAA, also $2,000, shows the aim of the civil penalty was punishment. But this presupposes FAA officials looked at the

12

California statute and decided to impose the same amount as retribution and deterrence. No proof of this was presented. Furthermore, the amount of the penalty alone is not dispositive. In *Hudson*, by comparison, the Office of the Comptroller of the Currency imposed a civil fine of $100,000 against the defendant which was not found to be criminal punishment. While the amount of the civil penalty is relevant, the mere fact the civil penalty imposed by the FAA corresponds to the maximum fine for a violation of section 247.5 does not prove the aim of the federal civil penalty was criminal punishment, i.e., retribution and deterrence.

Gonzalez also claims the conduct of discharging a laser at an aircraft could be criminal in both jurisdictions. In *Hudson*, the conduct on which the civil penalty was imposed was also criminal. There, the high court stated, "the conduct for which [Office of the Comptroller of the Currency] sanctions are imposed may also be criminal . . . . This fact is insufficient to render the money penalties . . . criminally punitive." (*Hudson*, *supra*, 522 U.S. at p. 105.) We think likewise. We are not presented with any federal law to compare or assess.

We conclude the two *Kennedy* factors cited by Gonzalez are insufficient to prove the civil penalty imposed by the FAA was criminal punishment. Gonzalez has failed to meet his burden to show by the clearest proof the purpose and effect of the civil penalty was punitive. As *Hudson* stated, " 'the payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as enforcible by civil proceedings since the original revenue law of 1789.' " (*Hudson*, *supra*, 522 U.S. at p. 104.) Evidence Gonzalez paid a $2,000 civil penalty to the FAA for discharging a laser at an aircraft does not show he was previously criminally punished under the due process clause of the California Constitution, article I, section 15.[8]

---

[8] Because we find Gonzalez's payment of the civil penalty to the FAA is not criminal punishment, we need not address whether the state's constitutional double jeopardy clause provides protection against the separate sovereign doctrine.

We hold Gonzalez did not suffer an earlier criminal punishment in the form of the FAA penalty.  Hence, the state Constitution does not preclude the imposition of punishment in this case if Gonzalez is convicted.

## DISPOSITION

The judgment is reversed.  The superior court is ordered to set aside its dismissal and re-instate the complaint.

OHTA, J.[*]

WE CONCUR:

BIGELOW, P. J.

RUBIN, J.

---

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.